Tricia Weaver(#232242)
WEAVER LAW OFFICES
601 Montgomery Street, Suite 1150
San Francisco, CA 94111
Email: Triciaweavermoss@gmail.com

Olivera Medenica (#2609)**
WAHAB & MEDENICA LLC
125 Maiden Lane, Suite 208
New York, NY 10038
Email: OMedenica@wrlawfirm.com

** *Pro Hac Vice pending*
*Attorneys for Petitioner Dr. Bertina Jommi*

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

CV 13 80 212MISC

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>BERTINA JOMMI,<br><br>Petitioner,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Wordpress.com and Automattic, Inc. for Use in Foreign Proceedings. | Case No.:<br><br>**EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. §1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AND SUPPORTING MEMORANDUM** |

Petitioner, Bertina Jommi ("Jommi"), hereby makes this application for limited discovery in aid of a criminal proceeding currently pending in Lausanne, Switzerland, for the reasons stated in this memorandum.

## I.    BACKGROUND

Petitioner requests that the Court allow it to serve a subpoena on a certain Online Service Provider ("OSP") located in this District to identify the individual(s) who authored an anonymous post on the OSP's website that included comments defaming Petitioner.   The post contains statements that are highly relevant to the criminal proceeding pending in Lausanne and any subsequent civil action that Petitioner may seek

1

against this anonymous poster. The identity of the author of these comments is a key piece of evidence for Petitioner's investigation and prosecution of her claim.

### *The Swiss Criminal Proceeding*

The criminal proceeding currently pending before the Ministere Public de l'Arrondissement de Lausanne, a public prosecutor's office with the jurisdiction to handle all criminal matters arising in the Canton de Vaud (a region of Switzerland), is the following: Case No. PE13.000660-JMU (the "Swiss Criminal Proceeding"). See Exhibits A (complaint) and B (order of suspension) to Request for Judicial Notice in Support of Bertina Jommi's 28 U.S.C. §1782 Application ("RJN"); Declaration of Bertina Jommi dated September 28, 2013 ("Jommi Decl."), Exhibit D and F.

The Swiss Criminal Proceeding was started by Petitioner's filing of a complaint on November 15, 2012 against the author of an anonymous post featured on Wordpress.com. RJN, Exhibit A. Petitioner's complaint alleges that this anonymous author defamed her in violation of Swiss penal law. Id. On May 23, 2013 the Swiss Criminal Proceeding was suspended indefinitely on the grounds that a Swiss court could not order Wordpress.com to release the defendant's identity because Wordpress.com is beyond the Swiss courts' jurisdictional reach. RJN, Exhibit B.

### *The Underlying Factual Circumstances*

Petitioner is a Swiss psychologist and psychotherapist based in Lausanne, Switzerland. Jommi Decl. ¶2. Petitioner specializes in couples therapy, family therapy and individual therapy. Id. The factual background relating to the Swiss Criminal

Proceeding spans almost a decade and involves a difficult marital dispute as well as allegations of child sexual abuse. Jommi Decl. ¶3.

Around December 20, 2005 the Direction de l'Enfance des Bouches du Rhone (a Swiss child protective services agency) (the "Agency") was notified by the cousin of a Mrs. Helene Jossi, that Mrs. Jossi's three-and-one-half-year-old daughter ▉ had told her mother about a year prior that a "pee pee in the behind really hurts." Jommi Decl. ¶4, Exhibit A at 1 (Translation and original of report by Mrs. Amel Lahzami and Mrs. Aude Berger, dated February 1, 2006).

The Agency followed up with Mrs. Jossi and requested that she come in for an interview. Jommi Decl. ¶5. This interview was memorialized in a written report (the "Report") subsequently issued by the Agency in accordance with Agency protocol. Id., Exhibit A at 1. According to the Report, around January 11, 2006 Mrs. Jossi came in for an interview and revealed that she is aware that her cousin is concerned about her daughter and that she was married to Mr. Jean-Paul Jossi, but that they were in the process of getting a divorce. Id. She confirmed that her daughter, ▉, had indeed said those words while taking a bath with both her parents present. Id. A week after her daughter uttered the phrase, she learned that her husband had frequent unprotected sex with various prostitutes, and that as a result Mrs. Jossi had contracted various STDs. Id., Exhibit A at 1 and 2. According to Mrs. Jossi, Mr. Jossi explained to her that he had uncontrollable sexual urges and that he suffered from a double personality, which resulted in his regular visits to prostitutes. Id., Exhibit A at 2.

As a result of her husband's revelations, Mrs. Jossi consulted Dr. Herzog at the Service Universitaire de Psychiatrie de l'Enfant et de l'Adolescent (SUPEA) (a Swiss

university hospital specializing in child and adolescent psychiatry), who ultimately concluded that Mrs. Jossi should not worry excessively, but that she should stay vigilant. Jommi Decl. ¶6 Exhibit A at 2. In discussing her separation with the Agency, Mrs. Jossi stated that during the couple's separation, they consulted a couples therapist. Jommi Decl. ¶7 Exhibit A at 2 and 3. According to the Report, Mrs. Jossi indicated that this therapist had informed Mrs. Jossi that ▮▮'s phrase was not insignificant. Id., Exhibit A at 2. As a result, Mrs. Jossi consulted another psychiatrist, Dr. Mahler, who confirmed the same suspicions – namely, that ▮▮'s phrase was cause for serious concern. Id., Exhibit A at 2. Although not specifically mentioned in the Report, Mrs. Jossi also consulted Petitioner in May of 2004 with her daughter ▮▮, and for a number of sessions individually with Mrs. Jossi, and again in June of 2005, along with her daughters ▮▮ and ▮▮. Jommi Decl. ¶8.

Mrs. Jossi further reported that she noticed an odd relationship between Mr. Jossi and ▮▮, and that he treated ▮▮ as a woman and not a child, despite her young age. Jommi Decl. ¶9, Exhibit A at 3. This was apparent in the way he caressed ▮▮, and that she found his behavior had a certain level of ambiguity. Id. She further added that upon ▮▮'s return from vacation with her father, she had found a pair of ▮▮'s panties that had blood stains. Id.

According to the Report, Mrs. Jossi ultimately confronted Mr. Jossi, and he became furious that she was suspecting him of child abuse. Jommi Decl. ¶10, Exhibit A at 2 and 3. Ultimately, Mrs. Jossi decided not to pursue this matter any further, as she was unsure whether something did actually happen or not and she did not want to further traumatize her daughter. Id. at 3.

4

The Agency obtained Mrs. Jossi's permission to contact all the doctors mentioned in the Report and by Mrs. Jossi during her interview, including Petitioner. Jommi Decl. ¶11, Exhibit A at 3. The Agency therefore contacted Petitioner to verify whether Mrs. Jossi's statements were accurate. Id., Exhibit A at 4. After obtaining Mrs. Jossi's permission to do so, the Agency contacted Petitioner and Petitioner confirmed those statements which Petitioner believed to be accurate. Id., Exhibit A at 4-5. Petitioner's confirmation was also incorporated into the Report. Id.

**Subsequent Criminal Proceeding Against Mr. Jossi**

The Report was ultimately submitted in a criminal proceeding against Mr. Jossi for child sexual abuse. Jommi Decl. ¶12, Exhibit B (Translation and original of correspondence from Mr. Philippe Lavanchy to the judge assigned to the criminal case against Mr. Jossi dated February 14, 2006). Around February 21, 2006 the judge presiding over the criminal matter issued a five week temporary restraining order forbidding Mr. Jossi to visit his children. Jommi Decl. ¶12. The criminal proceeding never resulted in a conviction as the Report, Mrs. Jossi's testimony, along with the testimony of the remaining witnesses called to testify, were deemed insufficient proof by the presiding judge to warrant a conviction. Id.

**Mr. Jossi's Complaint Against Petitioner at the Association of Swiss Therapists and the Federation of Swiss Psychologists**

After learning of the Report, Mr. Jossi filed a complaint against Petitioner before the Association of Swiss Therapists ("AST") and the Federation of Swiss Psychotherapists ("FSP"). Jommi Decl. ¶13. Both are private professional organizations

5

that internally regulate the psychology and psychotherapy fields; both of which Petitioner was a member when Mr. Jossi lodged his complaint. Id.

The gist of Mr. Jossi's complaint before the FSP (filed in October of 2006) was that the Report was Petitioner's entire fabrication and not based upon the testimony of Mrs. Jossi. Jommi Decl. ¶14. Mr. Jossi further alleged that Petitioner had breached the doctor patient privilege and that Petitioner had described his ex-wife's psychological profile without his permission. Id. As a result, he requested 80,000 CHF (Swiss Francs) in compensation, as representative of damages and interests he had incurred. Id. The FSP refused his request. Id. The gist of his complaint before the AST (filed in June of 2009) was based upon similar grounds, and similarly dismissed. Id.

### Defamatory Post on Wordpress.com

Around November 14, 2012 one of Petitioner's patients notified Petitioner that an article, or blog posting, had been posted online discussing Petitioner's competence, or lack thereof (the "Article"). Jommi Decl. ¶15. The article was posted on Wordpress.com by an anonymous blogger. Jommi Decl. ¶15, Exhibit C (Translation and original of Wordpress article). The Article makes a variety of statements, namely that: (1) Petitioner is psychologist practicing without a license; (2) a consultation with Petitioner results in unwarranted criminal proceedings; (3) Petitioner routinely breaches the doctor-patient privilege without regard for the privacy of her patients; (4) if appropriately compensated, Petitioner can be manipulated into testifying against her patients, resulting in a couple's separation and the destruction of families; and (5) Petitioner has violated a number of ethics rules, all of which are expressly cited to in the Article. Jommi Decl. ¶16, Exhibit C generally.

6

The Article was posted on a blog with the web address
www.fauteprofessionnellesuisse.wordpress.com. Jommi Decl, Exhibit C. The URL to
the offending blog post is http://fauteprofessionnellesuisse.wordpress.com/tag/jommi-
bertina-a-lausanne-local-ch/. Id. There are no personal identifiers tied to the blog or blog
posting. The blog is hosted on Wordpress.com, a blog publishing service that provides
web space and templates to its users free of charge. Users simply complete an enrollment
form with an email address, choose a domain name for their blog, accept
Wordpress.com's terms and conditions and are able to publish content to the Internet via
Wordpress.com's servers.      Wordpress.com is run by Automattic, Inc.    See
Wordpress.com "About Us", http://en.wordpress.com/about/, RJN, Exhibit C.
Automattic maintains a business address in this district at 132 Hawthorne Street, San
Francisco, CA 94107. See, Automattic.com "Contact," http://automattic.com/contact/,
RJN, Exhibit D. Automattic is a Delaware corporation registered to do business in
California. California Secretary of State Record for "Automattic, Inc.", RJN, Exhibit E.
On that record, Automattic lists its address as 132 Hawthorne Street, San Francisco, CA
94107, and notes that Paul Sieminski is its agent for service of process, and may ·be
served at 132 Hawthorne Street, San Francisco, CA 94107. Id. Wordpress.com does not
appear to be registered with the California Secretary of State.

The allegations in the Article closely resemble the allegations contained in Mr.
Jossi's complaints to the FSP and AST. Jommi Decl. ¶17. It is Petitioner's belief that
the anonymous poster is Mr. Jossi. Id. Petitioner is unaware of any other individual or
patient that would harbor similar feelings against Petitioner, or that would involve similar
factual circumstances. Id.

This anonymous posting has caused injury to Petitioner by publishing false and misleading information about Petitioner's abilities and trustworthiness as a psychologist and psychotherapist. As a result of this posting, Petitioner saw a dramatic drop in patients and a commensurate decrease in her income. Jommi Decl. ¶20.

### *Criminal Complaint Against Anonymous Poster*

Around November 15, 2012 Petitioner filed a criminal complaint against the anonymous poster of the Article for defamation. Jommi Decl. ¶18, Exhibit D (Translation and original of criminal complaint dated November 15, 2012). In an attempt to identify the anonymous poster, around November 29, 2012 Petitioner contacted WordPress.com, requesting that they take down the Article. Jommi Decl. ¶19. Around November 30, 2012 WordPress.com responded, informing Petitioner that it could not take down the Article without a duly issued court order. Jommi Decl. ¶19, Exhibit E (Translation and original of email correspondences between Dr. Jommi and Wordpress dated November 29 and 30, 2012).

Despite the striking similarity between the Article and the complaints lodged against Petitioner by Mr. Jossi, the criminal proceeding against the anonymous poster was suspended. Jommi Decl. ¶22. On May 23, 2013 the Ministere Public de l'Arrondissement de Lausanne suspended the criminal proceeding against this anonymous individual indefinitely on the grounds that a Swiss court cannot order Wordpress.com to release the defendant's identity because Wordpress.com is beyond the Swiss courts' jurisdictional reach. Jommi Decl. ¶22, Exhibit F (Translation and original of court order suspending the proceedings dated May 23, 2013); RJN, Exhibit B. In other

words, the proceeding was suspended pending Petitioner obtaining a court order to subpoena such information from WordPress.com. Jommi Decl. ¶23.

Without an IP address or any other identifying information for this anonymous poster, Petitioner has no available recourse for identifying the person or persons that made the defamatory remarks in the Article. Therefore, Petitioner seeks to serve third-party subpoenas under Rule 45 of the Federal Rules of Civil Procedure upon Wordpress.com and its parent company Automattic for the IP address(es) used to make the anonymous post and any other personally identifying details, such as name, email addresses, physical addresses, age, etc., which could be used to identifying this anonymous poster.

### III.    ARGUMENT

#### A.    Legal Standard

The purpose of 28 U.S.C. §1782 is to provide federal court assistance in the gathering of evidence for use in a foreign tribunal. See 28 U.S.C. §1782; see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247, 124 S. Ct. 2466, 159 L.Ed.2d 355 (2004) (noting that section 1782 is "the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals"). Section 1782 provides in relevant part:

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing

9

> be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. §1782(a). The statute thus sets forth three requirements, authorizing the district court "to grant a Section 1782 application where (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or 'any interested person.'" In re Republic of Ecuador, 2010 U.S. Dist. LEXIS 102158, at *4 (N.D. Cal. Sept. 15, 2010) (quoting In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at *15 (S.D.N.Y. 2010).

In Intel, the Supreme Court set forth several non-exclusive factors to aid district courts in determining how to exercise their discretion in granting Section 1782 applications. These factors include: (1) whether "the person from whom discovery is sought is a participant in a foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal–court judicial assistance"; (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65.

**B.    Jommi's Application Meets the Section 1782 Requirements**

Jommi's request for discovery meets each of the three statutory requirements. First, the person from whom discovery is sought, Wordpress.com and its parent company Automattic Inc., "resides or is found" in this District.    28 U.S.C. §1782(a). Wordpress.com is a blog-hosting service owned by Automattic., Inc. See RJN, Exhibit C. Automattic, Inc. is an entity registered to do business in the State of California that maintains its headquarters at 132 Hawthorne Street, San Francisco, California 94107. See RJN, Exhibits D and E.

Second, the discovery is sought for use in a "proceeding before a foreign tribunal." 18 U.S.C. §1782(a). Specifically, Jommi seeks the information for use in establishing the identity of the anonymous blogger in order to resume the criminal proceeding currently suspended against this *John Doe* before the Ministere Public de l'Arrondissement de Lausanne.[1] See Jommi Decl. at ¶¶22-23, and Exhibit F; RJN Exhibit B.    Most importantly, Section 1782 permits such discovery even where the foreign proceedings, as here, consist of "a criminal investigation conducted before formal accusation." 18 U.S.C. §1782(a).

Furthermore, the fact that the proceedings were suspended does not prevent discovery for purposes of Section 1782. The assistance of Section 1782 is not limited to "imminent" or even "pending" proceedings. This was clarified in the Intel case, which held that Section 1782 requires only that a dispositive ruling, reviewable by the courts, be

---

[1] The Ministere Public de l'Arrondissement de Lausanne is a public prosecutor's office with the jurisdiction to handle all criminal matters arising in the Canton de Vaud (a region of Switzerland). After the police investigates what has happened, the public prosecutor has jurisdiction over the case to decide whether there is enough evidence to bring charges. The public prosecutor is responsible for bringing the case to court and conducting the trial. See RJN, Exhibit F (Swiss governmental website explaining how to file a criminal complaint, https://www.ch.ch/en/reporting-someone-police-filing-report/); RJN, Exhibit G (Swiss governmental website explaining the role of the Ministere Public de l'Arrondissement de Lausanne, http://www.vd.ch/autorites/ministere-public/organisation/).

"within reasonable contemplation." Intel, 542 U.S. at 259. Once Jommi is able to obtain the information relating to the identity of the anonymous poster, the criminal proceeding can resume and a final dispositive ruling can be sought by the Swiss prosecutor.

Third, as the individual who was harmed by the actions of the anonymous blogger, Jommi qualifies as an "interested party." 18 U.S.C. §1782(a). In Intel, the Supreme Court clarified that "any interested person" is intended to include not only litigants before foreign and international tribunals, but also foreign and international officials as well as any other person who possesses a "reasonable interest" in obtaining judicial assistance. Intel, 542 U.S. at 256-57. Jommi's interest in obtaining judicial assistance is indisputable. The blog posting featured on Wordpress.com targets her personally and has resulted in significant ramifications to her private psychotherapy practice. See Jommi Decl. at ¶¶16 and 20. Jommi therefore has a direct interest in the outcome of the criminal proceedings against this anonymous user.

Accordingly, Jommi has satisfied the statutory requirements for an application under 28 U.S.C. §1782(a).

## C.   The Supreme Court's Intel Factors Strongly Favor Granting Jommi's Application

In addition, the factors identified by the Supreme Court in Intel and later cases weigh heavily in favor of the Court exercising its discretion to grant Jommi's request for discovery.

### 1.   *Wordpress.com and Automattic are Not Parties to the Foreign Proceedings*

The Intel Court first asked whether "the person from whom discovery is sought is a participant in the foreign proceeding." Intel, 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent §1782 aid"). Here, Wordpress.com and Automattic, Inc. are not parties to the foreign litigations, and the material sought – IP address(es) and other personally identifying details, such as name, email addresses, physical addresses, age etc. which could be used to identify the anonymous blogger – is not within the foreign tribunal's jurisdictional reach. See In re Yamaha Motor Espana, 2011 U.S. Dist. LEXIS 75471 at *11 (N.D. Cal. 2011) (noting that "Wordpress.com and Automattic are not parties in the Spanish Labor Proceedings, and therefore this factor weighs in [Petitioner's] favor").

## 2.    *Jommi Seeks Highly Relevant Information That Will Assist the Foreign Proceedings*

The Intel Court next counseled courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264. Because the criminal proceeding in Switzerland was suspended on the sole ground that Wordpress.com is beyond the Swiss courts' jurisdiction, discovery regarding potential information that could identify this anonymous blogger would be critical in order to resume such proceedings. See London v. Does, 279 F. Appx. 513, 515 (9th Cir. 2008) (affirming order granting 1782 discovery when proof sought was "critical" in light of the "nature and character of the foreign case").

13

Furthermore, prior cases have granted Section 1782 discovery for criminal proceedings and investigations pending in Switzerland. See e.g., In re Guido Gianasso, 2012 U.S. Dist. LEXIS 25763 (N.D. Cal. 2012) (granting 1782 discovery to a Swiss citizen in aid of an ongoing criminal investigation in Geneva, Switzerland); Weber v. Finker, 554 F.3d 1379 (11th Cir. 2009) (affirming order granting 1782 discovery for use in a Swiss criminal investigation prior to formal accusation by the Swiss government).

### 3.    *No Foreign Discovery Restrictions Bar Jommi's Requested Discovery*

28 U.S.C. §1782 does not require that the documents sought be discoverable in the foreign courts. Intel, 542 U.S. at 260-63. However, a district court may consider whether a Petitioner was seeking in bad faith "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id. at 265. Here, Petitioner is unaware of any restrictions on proof-gathering procedures that would prohibit obtaining the discovery she seeks through Section 1782. To the contrary, as noted above, courts have routinely granted applications under Section 1782 for evidence to be used in foreign proceedings held in Switzerland. See e.g., In re Guido Gianasso, 2012 U.S. Dist. LEXIS 25763 (N.D. Cal. 2012); Weber v. Finker, 554 F.3d 1379 (11th Cir. 2009).

Furthermore, the Swiss criminal proceeding in this case was suspended precisely for the reason that Wordpress.com and Automattic, Inc. are beyond the jurisdictional reach of Swiss authorities. See Jommi Decl. at ¶22; RJN, Exhibit B. Petitioner also attempted to obtain this information independently by submitting an online request to Wordpress.com via its online complaint form on November 29, 2012. See Jommi Decl. at ¶19, Exhibit E. Petitioner requested the identity of this anonymous poster and asked

14

that the blog posting be taken down because it contained defamatory content in violation of Swiss law. Id. Wordpress.com refused, citing its internal policy on these types of requests in the absence of a court order. Id. Accordingly, Section 1782 is the only procedural method through which Petitioner can obtain this information.

**4.    *Jommi's Discovery Is Narrowly Tailored to Avoid Undue Burden***

The Intel Court finally noted that "unduly intrusive or burdensome requests may be rejected or trimmed." Intel, 542 U.S. at 265. Here, Petitioner's proposed discovery requests are narrowly tailored and minimally burdensome.    Petitioner seeks IP address(es) and other personally identifying details, such as name, email addresses, physical addresses, and age which could be used to identify the anonymous blogger. The universe of responsive documents is thus likely to be small and easily searchable, avoiding any undue burden on Wordpress.com and Automattic, Inc.

Furthermore, the identity of this anonymous poster is relevant to the Swiss criminal proceeding because the posting constitutes a violation of Swiss penal law – specifically, sections 173 and 174 of the Swiss Penal Code concerning libel and defamation.    Accordingly, the information requested is relevant to the criminal proceeding, and the identity of this anonymous poster is otherwise unattainable, given that the relevant posts were made through Wordpress.com's servers in this district. See In re Yamaha, 2011 U.S. Dist. LEXIS at *14; London v. Does, 279 Fed. Appx. 513, 515 (9th Cir. 2008)(upholding denial of motion to quash where evidence was otherwise unattainable in French proceedings); see also Intel Corp., 542 U.S. at 264 (noting that evidence from nonparties to foreign proceeding would likely be unobtainable absent §1782). Moreover, the request is not unduly intrusive or burdensome because it seeks to

15

gather only identifying information for the accounts and not the content of any communications. See In re Yamaha, 2011 U.S. Dist. LEXIS at *14.

Accordingly, the Intel factors strongly favor the Court exercising its discretion to grant Petitioner's application. Indeed, courts in this Circuit have routinely permitted discovery under Section 1782, when, as here, the Petitioner has satisfied the statutory requirements and the above factors weighed in favor of granting relief. E.g., In re Yamaha, 2011 U.S. Dist. LEXIS 75471 (N.D. Cal. 2011); In re Gianasso, 2012 U.S. Dist. LEXIS 25763 (N.D. Cal. 2012).

## D.     The Contemplated Subpoenas are Limited and Do Not Offend Either First Amendment Concerns or the Protections Afforded OSPs in the Cable Privacy Act

In addition to fulfilling the mandatory and discretionary requirements pursuant to 28 U.S.C. §1782, this application also does not offend applicable U.S. authority on propounding discovery on OSPs for the identification of anonymous author(s).

Because discovery pursuant to 28 U.S.C. §1782 must comport with the Federal Rules of Civil Procedure, we now turn to analyze how this discovery request would be handled under the Rules if this were U.S. litigation against an anonymous Doe defendant, where the same type of third-party subpoena would be served on an OSP to identify the unknown defendant and effect service upon him/her. An application of this legal framework to the case at hand demonstrates that Petitioner has good cause for seeking the discovery requested in this application and that the appropriate safeguards to protect anonymous speech have been respected.[2]

---

[2] Similar applications have been granted in this jurisdiction and have not been found to violate First Amendment right to anonymous free speech. See London v. Does, 279 Fed. Appx. 513, 515-16 (9th Cir. 2008).

Courts in this jurisdiction have consistently held that when the identities of defendants are not known before a complaint is filed, a plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); see also Alberta Ltd. v. John Doe, 2010 U.S. Dist. LEXIS 100482, *4 (D. Utah Sept. 22, 2010) (permission to serve expedited discovery, including subpoenas on Twitter and Facebook, to identify unknown defendants who allegedly published false, defamatory and infringing statements on the Internet); Allcare Dental Mgmt., LLC v. Zrinyi, 2008 U.S. Dist. LEXIS 84015 (D. Idaho Oct. 20, 2008) (provisions of Cable Privacy Act permitted expedited discovery to determine identity of unknown defendants).

In evaluating whether a plaintiff establishes good cause to learn the identity of Doe defendants through early discovery, courts examine whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process. Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

Here, all of these elements are satisfied: (1) the blog author(s) is/are a real person(s) who may be sued in Switzerland; (2) Petitioner has unsuccessfully attempted to identify the anonymous poster prior to filing this application; (3) Petitioner's claims and defendants in the Swiss Criminal Proceedings are valid claims that have been

investigated and prosecuted in Lausanne and, thus, present at least a prima facie case; and (4) there is a reasonable likelihood that service of the proposed subpoena on the OSP will lead to information identifying this anonymous poster. See Jommi Decl. ¶¶22 and 23; RNJ, Exhibit A. The court therefore, should find that good cause exists to allow Petitioner to engage in the proposed discovery.

The requested discovery is necessary for Petitioner to determine the true name and address of the individual(s) who posted the offending content on www.fauteprofessionnellesuisse.wordpress.com. There are no other practice measures Petitioner could take to identify this anonymous poster. Petitioner is aware of no available information that would identify this anonymous poster, other than information maintained by its OSPs and Internet Service Providers ("ISPs"). Due to the nature of online transactions, as described below, Petitioner has no way of determining the anonymous poster's identity except through a third party subpoena.

The wrongful acts at issue in this action occurred through online uploading of statements to a web blog. In order to commit these illegal acts, a user must connect to the Internet. Individuals gain access to the Internet through an ISP. When an ISP provides Internet access to a subscriber, it does so through a modem located at the subscriber's home or office. Each time the subscriber accesses the Internet, the ISP provides a unique number to the subscriber called an Internet Protocol ("IP") address. This is somewhat akin to a telephone number. The IP address for a subscriber may stay the same (a static IP address) or it may change from time to time (a dynamic IP address). ISPs generally record the times and dates it assigns each IP address to a subscriber.

OSPs provide services to individuals, such as blog hosting and email services. While these services often allow users to subscribe to their services anonymously, the OSPs do have the ability to identify the IP address of the individuals using their online services.

Petitioner now seeks a subpoena directing Wordpress.com, as well as its parent company, Automattic, Inc., to identify the IP addresses that uploaded content to the Wordpress.com website. With the potential IP addresses in hand, Petitioner can then perform a simple search on public databases to determine which Internet access provider controls the specific IP address identified. Petitioner could then subpoena the resulting ISPs to determine the name and address of the subscribers to whom they assigned the various IP addresses recorded and/or proceed before the relevant Swiss authorities for determination of the same. The first step, however, is obtaining the IP address(es) from Wordpress.com and/or Automattic, Inc. with the assistance of this Court.

Petitioner, therefore, requests that the Court issue an order allowing it to serve a subpoena on the relevant OSPs requesting specific user IP address information and subscriber information necessary to identify the anonymous poster.

Since 47 U.S.C. §551 (The Cable Privacy Act) prohibits cable operators from disclosing identifiable information concerning subscribers without the prior written consent or electronic consent of the subscriber or a court order, and since some ISPs, including those listed above in this motion, are also cable operators, Petitioner requests that the Court order state clearly that the Court contemplated the Cable Privacy Act and that the order specifically complies with the Act's requirements. See 47 U.S.C. §551.

Petitioner requests that the Court issue the requisite Order instructing Wordpress.com, Automattic, Inc., and any other relevant service providers they identify (and who are subject to this Court's jurisdiction) to produce any and all documents and/or information sufficient to identify the user or users that posted the Article. Petitioner will only use this information to prosecute the claims made in and related to the Swiss Criminal Proceeding.    Without this information Petitioner cannot defend herself adequately to protect her business reputation and interests.

Pursuant to the Cable Privacy Act, such discovery should be conditioned on the OSPs having 7 calendar days after service of the subpoenas to notify the subscriber that their identity is sought by Petitioner, and each subscriber whose identity is sought having 21 calendar days from the date of such notice to file any papers contesting the subpoena.

## CONCLUSION

For the reasons set forth above, Petitioner respectfully requests that this Court grant her application for discovery in aid of foreign proceedings, and that it issue the subpoenas to Wordpress.com and Automattic, Inc. in the suggested form attached to the proposed order.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted,

WEAVER LAW OFFICES

By: Tricia Weaver(#_____) 232242
601 Montgomery Street, Suite 1150
San Francisco, CA 94111
Email: Triciaweavermoss@gmail.com

Date: October 4, 2013

WAHAB & MEDENICA LLC

By: Olivera Medenica (#2609)**
125 Maiden Lane, Suite 208
New York, NY 10038
Email: OMedenica@wrlawfirm.com

** *Pro Hac Vice pending*
*Attorneys for Petitioner Dr. Bertina Jommi*

Date: October 4, 2013