UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>BERTINA JOMMI,<br><br>Petitioner,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Wordpress.com and Automattic, Inc. for Use in Foreign Proceedings. | Case No.:<br><br>**DECLARATION OF DR. BERTINA JOMMI** |

I, Bertina Jommi, make the following declaration.

1.  I make this declaration upon personal knowledge and I am competent to testify to the facts set forth herein. I submit this declaration in support of my Application for Appointment of a Commissioner Regarding the Request for Judicial Assistance for the Issuance of a Subpoena Pursuant to 28 U.S.C. §1782. I seek the issuance of a subpoena to Wordpress.com and Automattic, Inc. to obtain documents in their exclusive possession, custody and control that are highly relevant to a criminal proceeding currently pending in Switzerland ("Swiss Proceeding").

2.  I am a psychologist and psychotherapist duly licensed under the laws of Switzerland and with a private practice based at 24, rue de Beau-Sejour, Lausanne, Switzerland. I specialize in couples therapy, family therapy and individual therapy.

Factual Background

3.  The factual background relating to the Swiss Proceeding spans almost a decade and involves a difficult marital dispute as well as allegations of child sexual abuse.

4.  Around December 20, 2005 the Direction de l'Enfance des Bouches du Rhone (a Swiss child protective services agency) (the "Agency") was notified by the cousin of a Mrs. Helene

Jossi, that Mrs. Jossi's three and a half year old daughter ▆ had told her mother about a year prior that a "*pee pee in the behind really hurts.*" See Exhibit A at 1 (Translation and original of report by Mrs. Amel Lahzami and Mrs. Aude Berger, dated February 1, 2006).

5. The Agency followed up with Mrs. Jossi and requested that she come in for an interview. This interview was memorialized in a written report (the "Report") subsequently issued by the Agency in accordance with Agency protocol. See Exhibit A at 1. According to the Report, around January 11, 2006 Mrs. Jossi came in for an interview and revealed that she is aware that her cousin is concerned about her daughter and that she was married to Mr. Jean-Paul Jossi, but that they were in the process of getting a divorce. Id. She confirmed that her daughter, ▆, had indeed said those words while taking a bath with both her parents present. Id. A week after her daughter uttered the phrase, she learned that her husband had frequent unprotected sex with various prostitutes, and that as a result Mrs. Jossi had contracted various STDs. Id. at 1 and 2. According to Mrs. Jossi, Mr. Jossi explained to her that he had uncontrollable sexual urges and that he suffered from a double personality, which resulted in his regular visits to prostitutes. Id. at 2.

6. As a result of her husband's revelations, Mrs. Jossi consulted Dr. Herzog at the Service Universitaire de Psychiatrie de l'Enfant et de l'Adolescent (SUPEA) (a Swiss university hospital specializing in child and adolescent psychiatry), who ultimately concluded that Mrs. Jossi should not worry excessively, but that she should stay vigilant. Id. at 2.

7. In discussing her separation with the Agency, Mrs. Jossi stated that during the couple's separation, they consulted a couples therapist. Id. at 2 and 3. According to the Report, Mrs. Jossi indicated that this therapist had informed Mrs. Jossi that ▆'s phrase was not insignificant. Id. at 2. As a result, Mrs. Jossi consulted another psychiatrist, Dr. Mahler, who

confirmed the same suspicions – namely, that ▇'s phrase was cause for serious concern. Id. at 2.

8.  Although not specifically mentioned in the Report, Mrs. Jossi also consulted me in May of 2004 with her daughter ▇, and for a number of sessions individually, and again in June of 2005, along with her daughters ▇ and ▇.

9.  Mrs. Jossi further reported that she noticed an odd relationship between Mr. Jossi and ▇, and that he treated ▇ as a woman and not a child, despite her young age. Id. at 3. This was apparent in the way he caressed ▇, and that she found his behavior had a certain level of ambiguity. Id. at 3. She further added that upon ▇'s return from vacation with her father, she had found a pair of ▇'s panties that had blood stains. Id. at 3.

10. According to the Report, Mrs. Jossi ultimately confronted Mr. Jossi, and he became furious that she was suspecting him of child abuse. Id. at 2 and 3. Ultimately, Mrs. Jossi decided not to pursue this matter any further, as she was unsure whether something did actually happen or not and she did not want to further traumatize her daughter. Id. at 3.

11. The Agency obtained Mrs. Jossi's permission to contact all the doctors mentioned in the Report and by Mrs. Jossi during her interview, including me. Id at 3. The Agency therefore contacted me to verify whether Mrs. Jossi's statements were accurate. Id. at 4. After obtaining Mrs. Jossi's permission to do so, the Agency contacted me and I confirmed those statements which I believed to be accurate. Id. at 4-5. My confirmation was also incorporated into the Report. Id.

Criminal Proceeding Against Mr. Jossi

12. The Report was ultimately submitted in a criminal proceeding against Mr. Jossi for child sexual abuse. See Exhibit B (Translation and original of correspondence from Mr. Philippe

Lavanchy to the judge assigned to the criminal case against Mr. Jossi dated February 14, 2006). Around February 21, 2006 the judge presiding over the criminal matter issued a five week temporary restraining order forbidding Mr. Jossi to visit his children. The criminal proceeding never resulted in a conviction as the Report, Mrs. Jossi's testimony, along with the testimony of the remaining witnesses called to testify, were deemed insufficient proof by the presiding judge to warrant a conviction.

Mr. Jossi's Complaint to the Association of Swiss Therapists and the Federation of Swiss Psychologists

13. After learning of the Report, Mr. Jossi filed a complaint against me before the Association of Swiss Therapists ("AST") and the Federation of Swiss Psychotherapists ("FSP"). Both are private professional organizations that internally regulate the psychology and psychotherapy fields; both of which I was a member when Mr. Jossi lodged his complaint.

14. The gist of Mr. Jossi's complaint before the FSP (filed in October of 2006) was that the Report was my entire fabrication and not based upon the testimony of Mrs. Jossi. Mr. Jossi further alleged that I had breached the doctor patient privilege and that I had described his ex-wife's psychological profile without his permission. As a result, he requested 80,000 CHF (Swiss Francs) in compensation, as representative of damages and interests he had incurred. The FSP refused his request. The gist of his complaint before the AST (filed in June of 2009) was based upon similar grounds, and similarly dismissed.

Defamatory Post on Wordpress.com

15. Around November 14, 2012 one of my patients notified me that an article, or blog posting, had been posted online discussing my competence, or lack thereof (the "Article"). The article was posted on Wordpress.com by an anonymous blogger. See Exhibit C (Translation and

original of Wordpress article).

16. The Article makes a variety of statements, namely that: (1) I am psychologist practicing without a license; (2) a consultation with me results in unwarranted criminal proceedings; (3) I routinely breach the doctor-patient privilege without regard for the privacy of my patients; (4) if appropriately compensated, I can be manipulated into testifying against my patients, resulting in a couple's separation and the destruction of families; and (5) I have violated a number of ethics rules, all of which are expressly cited to in the Article. See Exhibit C generally.

17. The allegations in the Article closely resemble the allegations contained in Mr. Jossi's complaints to the FSP and AST. It is my belief that the anonymous poster is Mr. Jossi. I am unaware of any other individual or patient that would harbor similar feelings against me or that would involve similar factual circumstances.

18. Around November 15, 2012 I filed a criminal complaint against the anonymous poster of the Article for defamation. See Exhibit D (Translation and original of criminal complaint dated November 15, 2012).

19. Around November 29, 2012 I contacted WordPress, requesting the identity of this anonymous poster and that WordPress take down the Article. Around November 30, 2012 WordPress responded, informing me that it could not take down the Article without a duly issued court order. See Exhibit E (Translation and original of email correspondences between Dr. Jommi and Wordpress dated November 29 and 30, 2012).

20. As a result of the Article, I saw a dramatic drop in patients and a commensurate decrease in my income.

21. Around December 31, 2012 someone tempered with my car and deflated my tires, taking the cap off of one of my tires. If I had driven on the highway, my tires would have ruptured,

resulting in an almost certain car accident. I feel threatened and in constant danger. I do not know who might have done this, but I also suspect it might be Mr. Jossi.

Criminal Proceeding Suspended

22. Despite the striking similarity between the Article and the complaints lodged against me by Mr. Jossi, the criminal proceeding against the anonymous blogger was suspended. On May 23, 2013 the Ministere Public de l'Arrondissement de Lausanne suspended the criminal proceeding against this anonymous individual indefinitely on the grounds that a Swiss court cannot order Wordpress.com to release the defendant's identity because Wordpress.com is beyond the Swiss courts' jurisdictional reach. See Exhibit F (Translation and original of court order suspending the proceedings dated May 23, 2013).[1]

23. In other words, the proceeding was suspended pending me obtaining a court order to subpoena such information from WordPress. I am therefore making the current request before this Court to obtain information identifying such blogger from WordPress in order to resume the criminal proceedings in Switzerland. I believe that WordPress will likely have relevant information within its possession that will be crucial to identifying the person or persons who made defamatory remarks about me in the Article that I first read on November 14, 2012.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and belief, the foregoing is true and correct.

Dr. Bertina Jommi

Dated: 28 September, 2013

---

[1] The Order of suspension references a correspondence that I sent to the assigned prosecutor on January 12, 2013. This letter was a more detailed description of the facts that I had alleged in the criminal complaint filed on November 15, 2012.